FILED
U.S. DISTRICT COURT
W.D.N.Y. ROCHESTER

2007 JUN 27 PM 12:26

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

MARYBETH PIZZO,

                        Plaintiff,                    **REPORT AND**
                                                      **RECOMMENDATION**
        v.                                            **04-CV-114**

HSBC BANK USA and NEAL BEASLEY,

                        Defendants.

_____


### Preliminary Statement

        Presently before the Court is defendants' motion for summary
judgment dismissing plaintiff's complaint in its entirety. (Docket
#23).  In her complaint, plaintiff alleges violations of the Family
and Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"), claiming that
HSBC Bank USA ("HSBC" or "the Bank") failed to reinstate her to her
former position or its functional equivalent after taking maternity
leave and that she was terminated in retaliation for taking such
leave. (Docket #1).  Magistrate Judge H. Kenneth Schroeder heard
oral argument on December 15, 2005.[1]  By Order of Judge Richard J.
Arcara dated November 14, 2006, all dispositive motions have been
referred to me pursuant to 28 U.S.C. §636(b)(1)(A)-(B) for a Report
and Recommendation.  (Docket #46).  The following is my Report and
Recommendation as to defendants' motion for summary judgment.

_____

        [1] Although no transcript of that argument was ordered or filed, this
Court has listened to a recording of that proceeding.

**Relevant Facts**

Plaintiff MaryBeth Pizzo began her employment with HSBC (formerly Marine Midland Bank) on October 21, 1985 as a secretary and over the course of several years she was promoted to the position of executive assistant. <u>See</u> Complaint ¶ 11 (Docket #1); Defendant's Statement of Undisputed Material Facts ¶ 1 (Docket #24); Plaintiff's Dep. Tr. at page 8 (Docket #25/33). In March 2000, HSBC created a new e-Business department headed by Executive Vice President Neal Beasley and plaintiff was transferred to that department as his executive assistant at a Salary Grade 58. <u>See</u> Plaintiff's Dep. Tr. at page 9; <u>see also</u> Affidavit of Kathryn Hatem at ¶ 2 (Docket #26).

From June 2002 until she went on leave as a result of her pregnancy in February 2003, plaintiff was "the only secretary in the e-Business department" and assisted both Senior Vice President John Camp and Defendant Neal Beasley, as well as "close to 30 other employees in the e-Business department that reported to Camp or Beasley" in Buffalo, New Jersey and New York City. <u>See</u> Plaintiff's Counter-Statement of Disputed Facts ¶ 9, 12, 18 (Docket #33); Plaintiff's Dep. Tr. at pages 14, 16-19. During that period, although plaintiff's primary duties were to assist Beasley, plaintiff states that she also "managed Camp's calendar, made his travel arrangements, kept track of his travel expenses, did his photocopying, arranged his meetings, obtained equipment for

2

computer presentations, scheduled appointments and did typing for him."  See Plaintiff's Counter-Statement of Disputed Facts ¶ 11; Plaintiff's Dep. Tr. at page 19.

It is undisputed that from February 5, 2003 through April 25, 2003, plaintiff was on short-term disability as a result of a high-risk pregnancy.  Plaintiff gave birth on March 2, 2003.  See Complaint at ¶ 13.  While she was on leave, HSBC assigned Judith Arcara Baxter to temporarily fill in for plaintiff in the e-Business department.  See Defendants' Statement of Undisputed Material Facts ¶ 9.  When her short-term disability ended, plaintiff chose to use vacation time from April 28, 2003 through May 14, 2003.  See Complaint at ¶ 14.  Although plaintiff planned to take 12 weeks of leave pursuant to the FMLA from May 15, 2003 through August 1, 2003, on July 9, 2003, plaintiff was called to attend a meeting with Neal Beasley and the Director of Human Resources, Kathryn Hatem, who told her that her position was being eliminated because Beasley was being transferred to HSBC's Chicago office.  Id. at ¶ 15; see also Plaintiff's Dep. Tr. at pages 29-31.

HSBC confirms that in July 2003, it "restructured its e-Business department and Executive VP Beasley relocated to Chicago, Illinois.  No one took over [his] responsibilities in the e-Business department at the Buffalo office."  See Defendants' Statement of Undisputed Material Facts ¶ 10.  Therefore, "the

3

position of Executive Assistant in the e-Business Department was eliminated." Id. at ¶ 12. According to HSBC, there were no other permanent executive assistant positions open in plaintiff's pay grade in the Buffalo area in the summer of 2003, although HSBC did offer plaintiff a temporary position at her job level and salary, which plaintiff refused. Id. at ¶ 16-17, 19. As part of her severance package, HSBC paid plaintiff her regular annual salary of $38,275.00 for the eight months following the elimination of her position. Id. at ¶ 21-22.[2] According to HSBC, plaintiff was "considered a regular full-time employee while on severance and could post for other jobs within the Bank" during that time, but she did not. Id. at ¶ 20.

During the restructuring, the position formerly held by plaintiff was "reclassified" from an Executive Assistant position at a Salary Grade 58 to a Management Assistant position at a Grade 57. See Plaintiff's Counter-Statement of Disputed Facts ¶ 26. Senior VP John Camp, who would remain in Buffalo, was "told he could hire an assistant . . . namely, a Management Assistant [at] Grade 57," so he, in conjunction with Kathryn Hatem, hired Judith Baxter, who had been filling in during plaintiff's maternity leave, for the position. See Defendants' Statement of Undisputed Material

---

[2] Plaintiff could have received a one year severance package, but chose to forego the additional severance which would have required her to sign a release waiving any legal claims against HSBC. See Plaintiff's Dep. Tr. at page 70.

Facts at ¶ 14; Complaint ¶ 18-19; Supplemental Affidavit of Kathryn

Hatem at ¶ 4 (Docket #40); Affidavit of John Camp at ¶ 4 (Docket

#39). An email Camp sent to Beasley on July 8, 2003, the day

before plaintiff was advised that her position was being

eliminated, suggests that HSBC was considering plaintiff for the

new "reclassified" position, but ultimately chose Baxter. Camp's

email states,

> As I'm sure you can appreciate, we need to
> maintain Administrative support in Buffalo for
> our Team. Judy [Baxter] currently supports
> myself and my direct reports, as well as Alan
> (and also Tracy in New Jersey). Judy is
> currently doing an excellent job providing a
> full range of support while covering
> responsibilities for you. I highly recommend
> that we keep Judy on board for on-going
> support. As you know, [Plaintiff] Mary Beth
> [Pizzo] has struggled with multi-tasking and
> based on prior performance I do not feel she
> can adequately support our team in the new
> environment.

See Affidavit of Judith Biltekoff, Esq., Exhibit N. Camp's

concerns mirror those expressed in plaintiff's June 2002

performance review prepared by Beasley which states, "Mary Beth and

I met on May 16 with regards to specific improvements/job

requirements. Acceptable progress is being made for the first

month but we must ensure that we don't revert back to bad habits

during the rest of the year." See Biltekoff Aff., Exhibit E.[3]

---

[3] Plaintiff speculates that Beasley might have known that she had
just become pregnant when he prepared her 2002 performance appraisal and
was motivated by such knowledge to give her a less than favorable review,
but there is no evidence in the record to support such a conclusion.

According to plaintiff, Baxter, who had been at a Grade 58 when she was filling in for plaintiff during her leave, stepped down to a Grade 57 to take over her position as the only secretary in the e-Business department. See Plaintiff's Counter-Statement of Disputed Facts, ¶ 18, 26. Plaintiff alleges that "[t]he positions of Management Assistant and Executive Assistant are essentially the same" (see Plaintiff's Counter-Statement of Disputed Facts ¶ 15), and that she "[a]bsolutely [] would have taken it" if the position had been offered to her because she could have received the same salary she had been earning even at the lower salary grade. See Plaintiff's Dep. Tr. at page 39. Baxter also testified that her responsibilities while she filled in during plaintiff's maternity leave did not change when she became Camp's management assistant. See Baxter Dep. Tr. at page 16 (annexed as Exhibit G to Biltekoff Aff.).

Defendants offer two different explanations for not offering the management assistant position to plaintiff. According to the Director of Human Resources, plaintiff was not offered the position because it would have been a "demotion" for her to move down to the management assistant position, which was a less "coveted and prestigious position." See Hatem Aff. ¶ 14-20. However, according to Beasley, plaintiff was not offered the position because it was his belief that "she wanted to stay home with her child" and because they had "issues with her performance." See Beasley Dep Tr.

at pages 24-25, 32 (annexed as Exhibit E to Affidavit of Martin
Idzik, Esq.)(Docket #25).

At her deposition, plaintiff testified that it was "obvious"
to her that her termination was related to her pregnancy because
after "work[ing] for the bank for 18 years and I became pregnant,
gave birth and when I specifically said I'm coming back full time
and made that point clear to Human Resources and Neal Beasley and
then I'm not allowed to come back [even though] the position is
still in existence today." See Plaintiff's Dep. Tr. at page 49.
Plaintiff also attributes her belief that she was discriminated
against to statements Beasley made when she announced that she was
pregnant. According to plaintiff, Beasley told her, "when you get
that baby in your arms, you're not going to want . . . to come back
to work full time . . . when a woman has a baby and she comes back
to work, she's less committed to her job because she doesn't want
to really be here, she wants to be with her baby." See Plaintiff's
Dep. Tr. at page 62. Plaintiff also claims that Beasley told her
that when he and his wife had a child, they made the decision that
his wife would stay home with the baby, because it was Beasley's
position that "a woman should stay home with her baby." See
Plaintiff's Dep. Tr. at page 66.

According to Beasley, he and plaintiff had "had conversations
that she wanted to stay home with her child" and that while she was
on maternity leave, they had "two or three phone calls" where she

7

was "struggling [with] whether she wanted to come back to work" that led him to believe that she "had not convinced herself that she was coming back in August." Based on these conversations, Beasley believed that once she received her severance package, plaintiff was "very happy." See Beasley Dep Tr. at pages 24-25, 32.

## Discussion

Summary Judgment Standard: The general principles used to evaluate the merits of summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is warranted where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, all ambiguities and inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion. Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d Cir. 1995). While the burden of showing that no genuine factual dispute exists is on the defendant, when faced with a properly supported summary judgment motion, plaintiff must "come forth with evidence sufficient to allow a reasonable jury to find in her favor." Brown

8

v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001). Such a showing "is not created by a mere allegation in the pleadings, nor by surmise or conjecture on the part of the litigants." United States v. Potamkin Cadillac Corp., 689 F.2d 379, 381 (2d Cir. 1982)(internal citation omitted). Finally, "the mere existence of factual issues – where those issues are not material to the claims before the court – will not suffice to defeat a motion for summary judgment." Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985).

In evaluating the merits of a summary judgment motion in the context of a discrimination claim, courts must be cautious in granting the relief where the conduct at issue "requires an assessment of individuals' motivations and state of mind" because juries have "special advantages over judges in this area." Brown v. Henderson, 257 F.3d at 251. Nevertheless, "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985). "[S]ummary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994). See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001)("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

9

Analysis under the FMLA:  In this case it is undisputed that plaintiff was entitled to take leave pursuant to the FMLA which permits, *inter alia,* an eligible employee to take up to twelve weeks of leave a year "because of the birth of a son or daughter of the employee and in order to care for such son or daughter."  29 U.S.C. § 2612.  Under the FMLA, "at the end of that leave the employee is entitled to reinstatement to the former position or an equivalent position." 29 U.S.C. § 2614(a).  An equivalent position is one that is "virtually identical" to the employee's former position "in terms of pay, benefits and working conditions" and it "must involve the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, responsibility, and authority." 29 C.F.R. § 825.215(a).

To ensure that an employee is not discriminated against for exercising his or her rights under the FMLA, the Act further provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter."  29 U.S.C. § 2615(a)(1).  The regulations describe "interference" as "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave," (29 C.F.R. § 825.220(b)), and that "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." 29 C.F.R. §

10

825.220(c).   Finally, the FMLA does not require an employer to
reinstate an employee who would have lost her position regardless
of taking FMLA leave.   See 29 C.F.R. § 825.216(a)("[a]n employee
has no greater right to reinstatement . . . than if the employee
had been continuously employed during the FMLA leave period;" an
employer must only show that an employee "would not otherwise have
been employed at the time reinstatement is requested in order to
deny restoration to employment").   See also Throneberry v. McGehee
Desha County Hosp., 403 F.3d 972, 979 (8th Cir. 2005)("As long as
an employer can show a lawful reason, i.e., a reason unrelated to
an employee's exercise of FMLA rights, for not restoring an
employee on FMLA leave to her position, the employer will be
justified");   McFarlane v. Chao, 2007 WL 1017604, *20 (S.D.N.Y.
March 30, 2007)(the FMLA does not protect an employee from being
terminated while he or she is on leave, it only prohibits an
employer from using FMLA leave as a reason for the termination).

In evaluating claims under the FMLA, the Second Circuit
recently noted that:

> [t]his Circuit has not settled upon a standard
> to use when evaluating employees' claims that
> they were punished for exercising their rights
> under the FMLA.   Two approaches have prevailed
> in other circuits and in the district courts
> within this Circuit.   One insists on extending
> the McDonnell Douglas approach to claims
> pursuant to § 2615(a)(1).   See Brungart v.
> BellSouth Telecomms., Inc., 231 F.3d 791 (11th
> Cir. 2000)(parenthetical omitted).   The other,
> championed by the Ninth Circuit, emphasizes

11

> that violation of § 2615(a)(1) involves
> *interfering with* the exercise of rights given
> by the FMLA rather than *retaliating against*
> those who make use of their rights.   See
> Bachelder v. Am. W. Airlines, Inc., 259 F.3d
> 1112, 1124 (9th Cir. 2001).

Potenza v. City of New York, 365 F.3d 165, 167 (2d Cir. 2004).

Noting that in King v. Preferred Technical Group, 166 F.3d 887, 891

(7th Cir. 1999), the Seventh Circuit found that it would be

appropriate to apply the McDonnell Douglas analysis to claims of

retaliation, but not to assertions of interference, the Court held

that since the case before it only involved a retaliation claim, it

did not need to decide whether to adopt this analysis.   Potenza,

365 F.3d at 168.   Similarly here, I find that since plaintiff's

complaint only raises a claim of retaliation, application of the

McDonnell Douglas burden-shifting analysis is appropriate.[4]

Under that analysis, in order to establish a prima facie case,

plaintiff must establish that: 1) she exercised rights protected

---

[4] In her opposition papers, plaintiff claims that she filed this
lawsuit in part, "based on Defendants' interference with her rights under
the FMLA."   See Plaintiff's Memorandum of Law at pages 1-3, 6-7 (Docket
#33).   However, plaintiff's complaint does not specifically allege a
claim for interference.   Moreover, it is undisputed that plaintiff was
granted the leave she requested.   Finally, plaintiff does not allege any
facts that defendants somehow impeded her ability to exercise her FMLA
rights.   To the extent plaintiff alleges that HSBC interfered with her
right to be reinstated, such is, in essence, a retaliation claim.   See
Potenza, 365 F.3d at 168.   Since plaintiff has not moved to amend the
complaint to add a claim for interference, the Court will limit its
analysis to plaintiff's claim of retaliation.   See Krosmico v. JP Morgan
Chase & Co., 2006 WL 3050869, n.2 (E.D.N.Y. Oct. 19, 2006)(court found
plaintiff did not allege that defendant interfered with her taking FMLA
leave and even if she had, such claim would fail because there was no
dispute that she was granted the FMLA leave she requested and was not
denied any benefit to which she was entitled).

under the FMLA; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.   Id.; see also Delgado v. Triborough Bridge and Tunnel Authority, ___ F.Supp.2d ___, 2007 WL 1227479, *6 (S.D.N.Y. April 26, 2007).

Here, the parties do not dispute that plaintiff's leave was taken in accordance with the FMLA, that she was qualified for her position and that in not being reinstated, she suffered an adverse employment action.   Therefore, plaintiff's ability to make out a prima facie case hinges on her ability to demonstrate an "indicia of retaliatory intent" associated with her termination.   Potenza, 365 F.3d at 168.   If plaintiff can establish a prima facie case of retaliation, the burden of production shifts to defendant to demonstrate a valid reason for the adverse employment action.   Once the defendant employer shows a valid reason for its adverse actions, the inference of retaliation is eliminated, and the burden of production shifts back to the plaintiff to prove that any seemingly legitimate reason proffered by the employer is, in reality, a pretext for unlawful retaliation.   See Russell v. Verizon Communications, Inc., 2007 WL 602239, *4 (W.D.N.Y. Feb. 20, 2007).

In establishing the fourth prong of a prima facie case, a plaintiff "can establish the 'causal connection needed for proof of

a retaliation claim,' by offering evidence from which a reasonable fact-finder could conclude that 'the protected activity was closely followed in time by the adverse action.'" McFarlane v. Chao, 2007 WL 1017604, *24 (S.D.N.Y. March 30, 2007), quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001). See also Merli v. Bill Communications, Inc., 2002 WL 424649, *6 (S.D.N.Y. March 18, 2002)(where plaintiff showed that termination closely followed FMLA leave, court found that fourth prong of prima facie case was met); Walker v. The Access Agency, 2004 WL 2216526, *8 (D. Conn. 2004)(court held that "retaliatory intent can be inferred because the layoff occurred just weeks after the end of [plaintiff's] medical leave").

Here, there is sufficient evidence to sustain a prima facie case of a violation of the FMLA. There is, of course, the temporal proximity between plaintiff's taking of the FMLA leave and her termination which occurred while she was still on leave. Additionally, however, executive vice president, Neal Beasley's alleged comments to plaintiff that women become less committed to their jobs once they have children and that they should stay home with her children, could also be viewed by a jury as evidencing a discriminatory motive. See Slattery v. Swiss Reinsurance America Corp., 248 F.3d 87, 92 (2d Cir. 2001)("when an executive's comments prove to be disadvantageous to a company's subsequent litigation posture, it cannot compartmentalize this executive as if he had

14

nothing more to do with company policy than the janitor or the watchman"); Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 333 (3d Cir. 1995)("We have held that a supervisor's statement about the employer's employment practices or managerial policy is relevant to show the corporate culture in which a company makes its employment decision, and may be used to build a circumstantial case of discrimination.").  Finally, there is evidence in the record that despite the fact that she worked as Camp's assistant for the year leading up to her maternity leave, plaintiff was ultimately replaced as his assistant by Judith Baxter, who had not recently taken FMLA leave.  Viewing these facts in the light most favorable to plaintiff as is required by Rule 56, such evidence, if believed by a jury, could suggest that plaintiff was treated differently than other similarly situated workers who did not take FMLA leave. See, e.g., McFarlane v. Chao, 2007 WL 1017604, *24 (S.D.N.Y. March 30, 2007)(plaintiff was "able to establish at least a genuine issue of fact as to this element of her [FMLA] prima facie case"); Esser v. Rainbow Advertising Sales Corp., 448 F.Supp.2d 574, 581 (S.D.N.Y. 2006)(where parties only disputed whether plaintiff could establish fourth prong of prima facie case and plaintiff produced evidence that defendant failed to investigate allegations against him as thoroughly as it did in other instances, court held that he successfully raised an issue of fact as to whether his FMLA leave was a negative factor in defendant's decision to terminate him);

15

Dupee v. Klaff's, Inc., 462 F.Supp.2d 233, 243 (D.Conn. 2006)(plaintiff adduced evidence sufficient to satisfy his prima facie case that he was terminated in retaliation for taking FMLA leave).

Accordingly, the burden shifts to HSBC to rebut plaintiff's prima facie case by offering a legitimate reason for her termination. There is no dispute that the e-Business department underwent a restructuring while plaintiff was on maternity leave and that Neal Beasley was transferred to the Chicago office. The need for an Executive Assistant was diminished with Beasley's transfer and HSBC contends this provided a legitimate basis for terminating plaintiff. HSBC also cites additional reasons for plaintiff's termination, namely, concerns about plaintiff's performance and HSBC's desire to reclassify the position to a less-costly management assistant position. These facts indicate legitimate justifications for plaintiff's termination because they do not suggest an unlawful motivation. See, e.g., McFarlane v. Chao, 2007 WL 1017604, *25 (S.D.N.Y. March 30, 2007)(defendant's claim that "budgetary and hiring constraints militated against plaintiff's re-appointment" was accepted by the court as there was evidence of a hiring freeze and consolidation occurring within the company); Merli v. Bill Communications, Inc., 2002 WL 424649, *6 (S.D.N.Y. March 18, 2002)(court found defendant's claim that plaintiff's job was eliminated as part of restructuring to reduce

costs to be a legitimate business reason). Certainly, this court remains cognizant that judges should not act as "super personnel departments" second-guessing an employer's business judgments. Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001).

That said, there is also evidence in this record suggesting discrimination and pretext. At the final stage of the McDonnell Douglas test, the burden shifts back to plaintiff to show that the purported reason is not true and is actually a pretext for an unlawful motive. Here, there are facts in the record upon which a reasonable jury could find that HSBC's proffered reasons were actually a pretext for a retaliatory motive and return a verdict in plaintiff's favor. In particular, (1) the timing of plaintiff's termination; (2) Neal Beasley's alleged comments to her when she announced her pregnancy; (3) the issue of whether the Management Assistant position was actually the functional equivalent of an Executive Assistant position for FMLA purposes[5]; and (4) the fact that HSBC did not offer the management assistant position to plaintiff because they viewed it as a "demotion" but instead offered the position to Judith Baxter, for whom it was also a demotion, all create enough uncertainty as to the true motivation behind plaintiff's termination as to require the denial of

---

[5] Compare *inter alia* exhibit "I" (Management Assistant job description) and exhibit "J" (Executive Assistant job description) annexed to affidavit of Judith Biltekoff, Esq.

defendants' motion for summary judgment. See, e.g., Tambash v. St. Bonaventure University, 2004 WL 2191566, *12-13 (W.D.N.Y. Sept. 24, 2004)(plaintiff raised sufficient questions of fact as to whether defendant's legitimate non-discriminatory reasons for his termination were in fact a pretext and that his termination was, in part, motivated by his FMLA leave); Merli v. Bill Communications, Inc., 2002 WL 424649, *6 (S.D.N.Y. March 18, 2002)(court permitted plaintiff's FMLA retaliation claim to go forward noting that "unless the employer has come forward with evidence of a dispositive nondiscriminatory reason as to which there is no genuine issue and which no rational trier of fact could reject, the conflict between the plaintiff's evidence establishing a prima facie case and the employer's evidence of a nondiscriminatory reason reflects a question of fact to be resolved by the factfinder after trial") quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 203 (2d Cir. 1995).

In their moving papers and at the hearing before Judge Schroeder, defendants rely on the argument that plaintiff's previous job was simply eliminated while she was on maternity leave and there is no requirement under the FMLA that an employee returning from leave be offered a "demotion." In this Court's view, defendants' "demotion argument" simply pays tribute to the material factual issues that remain for ultimate resolution by the trier of fact. For example, plaintiff disputes whether her former

position was truly eliminated by defendants and argues with some force that she was simply replaced in her former position by Judith Baxter. While defendants claim that Baxter assumed a different and "less prestigious" position than plaintiff held when she went out on leave, Baxter herself testified that her job duties during the time period she was temporarily doing plaintiff's job while plaintiff was on leave did not change when she was permanently hired by HSBC for the "new" position created after the restructuring. See Baxter Dep. Tr. at pages 16-22, annexed as exhibit "G" to Docket #33.

Second, assuming that Baxter did assume a different position than she was occupying on a temporary basis when covering for plaintiff, there is a clear factual dispute as to whether that new position was "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment" pursuant to 29 U.S.C. §2614(a)(1)(B). The FMLA does not require that an employee be returned to the same position the employee held before taking FMLA leave, just an equivalent job. The fact that a new position differs in some respects from a previous job held by plaintiff does not eliminate plaintiff from the protections of the FMLA. Indeed, "[t]he mere fact that the two jobs are in different salary grades is de minimis when the evidence shows that all the aspects of the job, including the salary, were identical or nearly identical." Felix v. Sun Microsystems, Inc., 2004 WL 911303, *12

19

(D. Md. April 12, 2004).  Here, Baxter has testified that the job
duties between plaintiff's old position and the new position she
assumed while plaintiff was on FMLA leave were nearly identical and
the record suggests that the positions entailed substantially
equivalent skill, effort, responsibility and authority.  Moreover,
the job title change notwithstanding, defendants concede that (1)
plaintiff was qualified for the new position, (2) plaintiff's
salary would not have been reduced had she assumed the new
position[6] and (3) a deliberate decision was made not to offer
plaintiff the new position despite the fact she was expected to be
returning from FMLA protected leave.  Magistrate Judge Schroeder
noted at oral argument that HSBC's claim that it did not offer
plaintiff the management assistant position because it would have
been a demotion, "rings hollow" on the present record.  At the very
least, whether the "new" position was a demotion or a substantially
equivalent employment opportunity is a disputed issue of fact for
the jury to resolve.  Reid-Falcone v. Luzerne County Community
College, 2005 WL 1527792, *7 (M.D. Pa. June 28, 2005)(determining
equivalency of job positions is usually a question of fact); Parker
v. Hanhemann University Hosp., 234 F.Supp.2d 478, 489 (D.N.J.
2002)(determining whether a job is "equivalent" under FMLA is

---

[6] During oral argument, defense counsel stated that even at the
lower pay grade, plaintiff would have been eligible for "a couple"
years of raises before reaching the salary ceiling at the "new"
position.

generally a question of fact for the jury).

Finally, even assuming her former position was actually "eliminated" during the restructuring and the new position was indeed a demotion, plaintiff points to evidence in the record suggesting that there were postings for other executive assistant positions, including one in Buffalo, during the period plaintiff remained an HSBC employee.[7]  See Affidavit of Laura R. Donahue (Docket #38).  Moreover, the record suggests that the job posting listing provided by defendants during discovery may not include all of the substantially equivalent jobs that were available during the relevant time period as some positions in HSBC were filled outside of the posting process.  See Hatem Dep. Tr. at page 79.  All of this controverted evidence on material issues confirms that summary judgment is not appropriate to resolve plaintiff's FMLA claim. Accordingly, it is my Report and Recommendation that defendants' motion for summary judgment on the FMLA cause of action be **denied**.

Intentional   Infliction   of   Emotional   Distress:  In her complaint, plaintiff alleges that HSBC's decision to terminate her was an intentional infliction of emotional distress.  In New York, "[l]iability for intentional infliction of emotional distress has

___

[7]  Although plaintiff was informed that her position was being eliminated while she was on maternity leave, she collected her salary pursuant to a severance policy where she remained a full-time employee of HSBC.  Indeed, Judith Arcara Baxter was collecting severance and deemed still to be an employee of the bank when she was "recalled" to assume plaintiff's job duties.  See Supplemental Affidavit of Kathryn Hatem (Docket #40) at ¶ 3.

been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Khan v. Federal Reserve Bank of New York, 2005 WL 273027, *13 (S.D.N.Y. Feb. 2, 2005) quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999).

It is well settled that whether a defendant's actions are extreme or outrageous is a question of fact, however, "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Edwards v. Community Enterprises, Inc. 251 F.Supp.2d 1089, 1105 (D.Conn. 2003)(internal quotations and citations omitted). Only where reasonable minds could differ does it become a question for the jury. Id. See also Johnson v. Chesebrough-Pond's USA Co., 918 F.Supp. 543, 552 (D.Conn. 1996).

Here, I find that even though there are questions of fact as to whether HSBC's purported reasons for terminating plaintiff are pretextual, the record does not support a jury finding that HSBC's conduct in terminating plaintiff was so extreme or outrageous as to be beyond the bounds of decency. Accordingly, it is my Report and Recommendation that plaintiff's claim for intentional infliction of emotional distress be dismissed. See Darboe v. Staples, Inc., 243 F.Supp.2d 5, *19 (S.D.N.Y. 2003)(court found question of fact as to

22

whether defendant's reason for demoting plaintiff was pretext for FMLA retaliation, but dismissed intentional infliction of emotional distress claim because "[n]o reasonable jury could find that defendant's conduct was extreme or outrageous given the facts before the court, even as interpreted most favorably for plaintiff"); Edwards v. Community Enterprises, Inc., 251 F.Supp.2d 1089, 1105 (D.Conn. 2003)(even though court permitted plaintiff's FMLA retaliation claim to survive summary judgment, it dismissed her claim for intentional infliction of emotional distress finding that although defendant's "conduct may not be commendable, it clearly falls short of being outrageous" and that "reasonable minds could not differ on this issue").

Defendant Beasley's Individual Liability:   In their motion papers, defendants do not dispute that individual liability is appropriate under the FMLA in some circumstances.  Under the FMLA, individual liability arises "when the supervisor 'exercise[s] sufficient control' over the employee's leave and employment status."  Mueller v. J.P. Morgan Chase & Co., 2007 WL 915160, *22 (N.D. Ohio March 23, 2007) quoting Phillips v. Leroy-Somer North America, 2003 WL 1790936, *8 (W.D. Tenn. March 31, 2003).

Here, I find that there is a question of fact as to Beasley's involvement in plaintiff's termination and the decision to hire Baxter, rather than offering the management assistant position to plaintiff, sufficient to keep him in the case.  Although defendants

allege that it was Camp and Hatem who made the decisions to terminate plaintiff and hire Baxter, this claim is undermined by (1) Beasley's presence at the July 9th meeting when plaintiff was told that her position was being eliminated; (2) Camp's email to Beasley on July 8th wherein he indicated his preference to keep Baxter over plaintiff, thereby suggesting that Beasley had some control over that decision; (3) Camp's testimony that any discussions about whether plaintiff should be offered the management assistant position "were primarily discussions that took place between Neal and Kathy" (see Camp Dep. Tr. at page 38); and (4) Beasley's presence at the meeting when Baxter was offered the management assistant position (see Baxter Dep. Tr. at page 17).

Based on the foregoing, it is my Report and Recommendation that defendants' motion for summary judgment to dismiss the individual claims against Beasley should be denied. See Phillips v. Leroy-Somer North America, 2003 WL 1790936 at *8 (although human resources manager actually made the decision to terminate plaintiff, since it was with the recommendation and input of her supervisor, court found "sufficient evidence of [supervisor's] involvement in plaintiff's termination for the claim against her to survive summary judgment").

## Conclusion

It is my Report and Recommendation that defendants' motion for summary judgment be **granted in part and denied in part**. Specifically, it is my Report and Recommendation that defendants' motion to dismiss plaintiff's FMLA causes of action against the corporate and individual defendant be **denied** and their motion for dismissal of plaintiff's claim for intentional infliction of emotional distress be **granted**.

**SO ORDERED.**

JONATHAN W. FELDMAN
United States Magistrate Judge

Dated: June 27, 2007
Rochester, New York

25

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

      **ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

      **ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R. Civ.P. 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3(a)(3).

      The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Patterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

      **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

      The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

      Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**SO ORDERED.**

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated: June 27, 2007
Rochester, New York

26